UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENROY VIGO,<br><br>         Petitioner,<br><br>  -against-<br><br>ALEJANDRO MAYORKAS,<br><br>         Respondent. | 22-CV-2649 (LTS)<br><br>ORDER OF DISMISSAL |

LAURA TAYLOR SWAIN, United States District Judge:

  Petitioner, who is currently incarcerated at Fishkill Correctional Facility, brings this *pro se* petition for a writ of *habeas corpus* under 28 U.S.C. § 2241. He challenges his detention and seeks "cancellation of removal." By order dated April 5, 2022, the Court granted Petitioner's request to proceed *in forma pauperis*. For the following reasons, the petition is dismissed.

## STANDARD OF REVIEW

  The Court may entertain a petition for a writ of *habeas corpus* from a person in custody who challenges the legality of his detention on the ground that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Court has the authority to review the petition and "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled [to such relief]." 28 U.S.C. § 2243.

  The Court is obliged, however, to construe *pro se* pleadings liberally and interpret them "to raise the strongest arguments they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original); *see Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001). Nevertheless, a *pro se*

litigant is not exempt "from compliance with relevant rules of procedural and substantive law." *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## BACKGROUND

Petitioner Denroy Vigo alleges the following facts. He is serving a sentence of 25 years' to life imprisonment, pursuant to a 1988 jury verdict in the New York Supreme Court, Bronx County.[1] (ECF 2 at 2, ¶¶ 4-5.) After his conviction, on September 28, 1994, an Immigration Judge ordered Petitioner's removal "to his native country, Antigua."[2] (*Id.* at 3, ¶ 9; *Id.* at 16.) Petitioner attaches a February 11, 2014, letter from U.S. Immigration and Customs Enforcement (ICE) requesting a copy of his passport in order to facilitate his removal. (*Id.* at 16.) On July 20, 2021, the New York State Department of Corrections and Community Supervision (DOCCS)[3] approved Petitioner for "conditional parole for deportation only . . . no later than April 20, 2023." (*Id.*) At the time of filing the petition, Petitioner remains at Fishkill Correctional Facility, and public records of DOCCS indicate that as of the date of this order, he is "in custody," rather than released to parole or to another agency.

---

[1] The Appellate Division, First Department, affirmed Petitioner's conviction, and the New York Court of Appeals denied leave to appeal. *People v. Vigo*, 170 A.D.2d 192 (1st Dep't 1991), *lv denied*, 77 N.Y.2d 968 (1991).

[2] According to public records of the U.S. Executive Office for Immigration Review, Petitioner's September 28, 1994 removal decision was issued by an Immigration Court in Napanoch, Ulster County, New York. The ICE online detainee locator does not indicate the Petitioner is in ICE custody.

[3] Petitioner states that DOCCS made his parole decision but the New York State Board of Parole is the entity charged with making determinations regarding release on parole.

Petitioner argues that he has been detained beyond the 90-day removal period set forth in 8 U.S.C. § 1231, and that as a result, he is entitled to cancellation of removal.[4] Petitioner seeks a writ of *habeas corpus* to (1) "discharge[e] [him] from his unconstitutional immigration confinement"; (2) "cancellation of removal and/or de novo review of removal proceedings"; and (3) furnish transcripts of all of his immigration proceedings. (*Id.* at 7.)

## DISCUSSION

**A.   Challenge to Detention**

U.S. immigration law "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under 8 U.S.C. §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 138 S. Ct. 830, 838 (2018). By contrast, detention of aliens who have already been ordered removed is governed by 8 U.S.C. § 1231(a)(1)(A), which provides in part that, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." During this 90-day "removal period," the alien must be held in custody. 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien."). After the conclusion of the initial 90-day removal period, the government "may" detain certain categories of aliens, or subject such aliens to conditions of release. 8 U.S.C. § 1231(a)(3), (6).

In *Zadvydas v. Davis*, the Supreme Court construed section 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond "a period reasonably necessary to secure removal." 533 U.S. 678, 699 (2001). The Supreme Court further held that six months is a presumptively reasonable period, *id.* at 701, which it calculated by finding that an additional 90

---

[4] Petitioner notes that there is a "pilot program" authorizing "home curfew" as an alternative to detention and asserts that he should be enrolled in this program "at the discretion of DHS." (ECF 2 at 4, n.1.)

days beyond the original 90-day removal period was reasonable. After six months have passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must either rebut the alien's showing or release the alien. *Id.*

Here, Petitioner argues that immigration authorities were entitled to detain him for 90 days "following his release from state custody." (ECF 2 at 4.) Petitioner relies on 8 U.S.C. § 1231(a)(1)(B), which provides that the 90-day removal period begins on the latest of three dates:

> (1) the date the order of removal becomes administratively final;
> (2) if the removal order is judicially reviewed and court orders a stay of removal, the date of the court's final order; or
> (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

According to Petitioner, he was "granted conditional release for deportation . . . on or after April 20, 2021, but no later than April 20, 2023." (*Id.* at 3.) Petitioner notes that the decision granting him conditional parole only for deportation issued on July 20, 2021, and he calculates that therefore "the six mont[h] period for removal has expired and cancellation of removal should be granted in its entirety." (*Id.* at 3).

Petitioner's allegations do not show that immigration officials have detained him beyond the time allowed. Petitioner calculates that his removal period began when the conditional release order issued in July 2021. Under the statute, however, the 90-day removal period begins to run on "the date the alien is released from detention or confinement," § 1231(a)(1)(B)(3), not the date the state Board of Parole issues an order approving conditional release. Both the petition and public records of DOCCS make clear that Petitioner remains at Fishkill Correctional Facility serving the sentence for his conviction, and that he has not yet been released from DOCCS

custody for deportation or removal.[5] Petitioner's argument that he has been impermissibly detained beyond the presumptively reasonable 6-month removal period must therefore be rejected because the removal period does not begin to run until a prisoner is "released from detention or confinement," § 1231(a)(1)(B)(3). Petitioner has not been released from DOCCS' custody, and he therefore does not provide any cognizable basis for relief.[6]

B.   **Challenge to Order of Removal**

Petitioner's request for cancellation of removal might be liberally construed as a challenge to the 1994 order of removal. The REAL ID Act of 2005, however, added 8 U.S.C. § 1252(a)(5), which strips federal district courts of jurisdiction to review orders of removal or requests for a stay of removal.

Under the REAL ID Act, "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this [Act] . . . ." 8 U.S.C. § 1252(a)(5). A petition for review "shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." *Id.* at § 1252(b)(2). Accordingly, Petitioner's challenge to the order of removal may be presented only in a petition for review of a final order of removal in the appropriate court of appeals. *See Shabaj v. Holder,* 718 F.3d 48 (2d Cir. 2013) (per curiam)

---

[5] Because Petitioner is subject to a final order of removal, he can be deemed constructively in immigration custody for certain purposes. *See, e.g., Henderson v. INS*, 157 F.3d 106 (2d Cir.1998) (holding that an alien who is subject to a final order of removal is deemed to be in immigration custody, even where he has been released on bail). Even if Petitioner is constructively in immigration custody for some purposes, he is also under detention (unrelated to immigration process), and thus the 90-day removal period in section 1231(a)(1)(B)(3) would only begin to run when he is "released from detention or confinement."

[6] The Court also notes that, even if Petitioner had been held beyond a presumptively reasonable period, at this time, he has made no showing that "there is no significant likelihood of removal in the reasonably foreseeable future," and the *Zadvydas* decision therefore does not require consideration of his release at this time.  See *Zadvydas*, 533 U.S. at 701.

5

("[W]hile *this court* would have jurisdiction to review any constitutional claims or questions of law raised by [petitioner] in a petition for review of CIS's hardship determination, the *district court* did not.") (emphasis in original).

Because this Court lacks jurisdiction to consider Petitioner's challenge to the removal order, "the only remaining question is whether the application should be transferred to the appropriate court of appeals or dismissed." *Agoro v. United States*, No. 11-CV-181 (SAS), 2011 WL 672415, at *3 (S.D.N.Y. Feb. 24, 2011). Where a petition for review is untimely, transfer to the court of appeals is not permitted because that court lacks jurisdiction over untimely petitions for review. *See De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 617-18 (2d Cir. 2007) (holding that it was an error for district court to transfer a time-barred challenge to a removal order; *habeas* petition should have been dismissed for want of jurisdiction).

An order becomes final upon a determination by the Board of Immigration Appeals (BIA) affirming such order, or upon expiration of the time to seek BIA review. 8 U.S.C. § 1101(a)(47)(B). A petition for review of an order of removal "must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). "The thirty days for filing a petition for review of the removal order . . . do[es] not begin to run until the BIA has complied with its regulations requiring service of the BIA's decision on the petitioner."[7] *Chen v. U.S. Atty. Gen.*, 502 F.3d 73, 75 (2d Cir. 2007) (citing *Zaluski v. INS,* 37 F.3d 72, 73 (2d Cir. 1994)).

---

[7] The regulations require that service be done by either "physically presenting or mailing a document to the appropriate party or parties," but they do not require that the party or parties actually receive the order. *See* 8 C.F.R. § 1003.1(f). "Once the BIA has performed its duty of serving the order, the time for appeal . . . begins to run, even if the order miscarries in the mail or the alien does not receive it for some other reason that is not the BIA's fault." *Chen*, 502 F.3d at 76-77 (citing *Radkov v. Ashcroft,* 375 F.3d 96, 99 (1st Cir. 2004)).

The time requirement for a petition for review under section 1252 is jurisdictional and thus not subject to equitable tolling. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 118 (2d Cir. 2008) (citing *Bowles v. Russell*, 551 U.S. 205 (2007) (holding that time limit imposed by statute is mandatory and jurisdictional, reasoning that "[b]ecause Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them")); *see also Moustapha v. Mukasey*, 269 F. App'x 94, 95 (2d Cir. 2008) (dismissing petition challenging final removal order because petition was filed four days after expiration of the 30-day deadline).

Here, Petitioner was ordered removed on September 28, 1994 (ECF 2 at 3, ¶ 9; *Id.* at 16), and he does not allege that he appealed the Immigration Judge's decision to the BIA. The removal order therefore became final when the time to appeal to the BIA expired. Petitioner had 30 days after the removal order became final to file a petition for review. This petition was filed decades after the order of removal became final. Because Petitioner's challenge to the 1994 order of removal is untimely, the Court declines to transfer this petition, which seeks cancellation of the removal order, to the Court of Appeals for the Second Circuit.

## CONCLUSION

The petition for a writ of *habeas corpus* under 28 U.S.C. § 2241, is denied insofar as Petitioner challenges his detention. The Court lacks jurisdiction to consider any challenge to Petitioner's 1994 order of removal and declines to transfer this matter to the Court of Appeals for the Second Circuit as a petition for review because it is untimely.

Because the petition makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   April 15, 2022
         New York, New York

                                              /s/ Laura Taylor Swain
                                              LAURA TAYLOR SWAIN
                                              Chief United States District Judge